**In re Diane GREEN, Debtor.**

**UNITED STATES TRUSTEE, Plaintiff,**

v.

**PLA PEOPLE'S LAW–ARIZONA, INC., and Richard S. Berry, Defendants.**

**Bankruptcy No. 95–00486–PL–JMM.**
**Adv. No. A95–113.**

United States Bankruptcy Court,
D. Arizona.

July 1, 1996.

Paul Randolph, Phoenix, AZ, for United States trustee.

Gary C. Brown, Chandler, AZ, for defendants.

Michael Hickman, Chandler, AZ, for debtor.

**MEMORANDUM DECISION**

JAMES M. MARLAR, Bankruptcy Judge.

This adversary proceeding, commenced by the United States Trustee ("UST"), raises a fascinating and important question regarding the extent of services which a nonlawyer may provide in connection with preparing a debt-

or's bankruptcy documents. Specifically, the UST challenges the propriety of a nonlawyer bankruptcy document preparer delivering to the Bankruptcy Court, on behalf of the debtor, the petition and the debtor's filing fee. The court has considered the arguments of counsel and now rules.

## I. FACTUAL SETTING.

The issue at hand is a legal matter and there is no factual dispute. Nevertheless, a brief recital of the facts is helpful to an understanding of the legal dispute. The debtor in this case, Diane Green, sought the assistance of People's Law in preparing her chapter 13 bankruptcy filing. People's Law is a nonlawyer document preparation service. As part of the arrangement, the debtor gave to People's Law a money order, made payable to the Bankruptcy Court, for the filing fee. People's Law then arranged for the debtor's petition, statements, schedules, and filing fee to be delivered to and filed with the Bankruptcy Court.

## II. LEGAL DISCUSSION.

In 1994, Congress enacted 11 U.S.C. § 110. That statute imposes restrictions upon the activities of nonlawyer bankruptcy petition preparers. At issue in this case is § 110(g), which provides:

> (g)(1) A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition.
>
> (2) A bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1).

The discrete legal issue is whether taking the money order from the debtor, and arranging for the filing of the debtor's papers and fee with the Bankruptcy Court, constitutes a prohibited collection or receipt of payment within the meaning of § 110(g).

█ People's Law contends that it has not violated the statute, arguing that the operative word in the statute is "payment." Payment is defined in The Random House Dictionary of the English Language as "the act of paying," "compensation, recompense, requital," "something that is paid," and "an amount paid." This, People's Law contends,

means that in order to collect or receive a "payment," one must give something in return. In other words, there must be an exchange. In this case, People's Law argues that it merely delivered the instrument to the clerk's office on the debtor's behalf. Such act, People's Law contends, does not constitute an exchange and, therefore, is not a receipt of "payment." It is nothing more than a delivery service.

The UST essentially argues that People's Law is focusing on a very narrow interpretation of a single word in the statute and, in so doing, has missed the purpose of the statute. According to the UST, the gravamen of § 110(g) is control. As explained by Collier, there were three reasons for the enactment of § 110(g)(1): (1) preventing the unauthorized filing of petitions; (2) preventing or curtailing the preparer's influence on a debtor's decision and timing on petition filing; and (3) preventing a preparer's misrepresentation, or misquoting of the filing fee. 2 Collier on Bankruptcy, § 110.06, pp. 110–09–11 (15th Edition 1996). In light of these concerns, § 110(g) prohibits a petition preparer from taking "control" of the filing fee and ultimately controlling the timing of the bankruptcy filing. The court is inclined to agree with the UST.

This issue goes far beyond the specifics of this particular case and finds its roots in the fundamental differences between lawyer and nonlawyer petition preparers. Since the enactment of § 110, much has been said about the statute's purposes. There are those among the nonlawyer petition preparers' ranks who insist that § 110 is a thinly-veiled attempt to protect the professional domain of lawyers and to exclude nonlawyers from making a living in the bankruptcy arena. While § 110 may, in fact, have the incidental effect of limiting the business of nonlawyer petition preparers, this court views § 110 primarily as a consumer protection measure unrelated to the practice of law.

When a person retains a lawyer to assist with a bankruptcy filing, he or she gives the lawyer authority to act in his or her place or stead. This authority includes the responsibility, among others, of preparing, signing, and filing pleadings and appearing in court

on the client's behalf. In exchange for this authority, the lawyer gives, affirmatively or through operation of law, certain assurances that the client's interests will be protected. First, by virtue of the lawyer's status as a lawyer, the client is given the assurance that the Bankruptcy Court will acknowledge that the lawyer is speaking on the client's behalf. No one, other than a lawyer, is afforded this privilege by the court. Second, the lawyer, again by virtue of his/her status as a lawyer, gives the client assurance of a minimal level of expertise in the law, as determined by an objective third party, to wit, the accredited integrated state bar association; every lawyer must be admitted to the bar, which requires one to pass the bar examination and a character and fitness review process. Third, the client is assured that the lawyer is subject to ethical obligations imposed by the Arizona Supreme Court and enforced by that Court in conjunction with the Arizona Bar Association. And, finally, the client is given the assurance that there will be an avenue for recovery if the lawyer breaches his/her responsibilities to the client. Most lawyers maintain malpractice insurance against which the client may recover. And, in the event that the lawyer has no such coverage and certain other criteria is met, the bar association maintains a client security fund.

A nonlawyer petition preparer, however, cannot offer a client similar assurances. Nonlawyer document preparers are not admitted to practice before the Bankruptcy Court. As such, the Court will not acknowledge any attempt to speak on behalf of a debtor. Indeed, the debtor proceeds *pro se* when a nonlawyer petition preparer is used. Nonlawyer document preparers give no assurances of a minimal level of competence in the law.[1] Indeed, there is no objective process whereby a petition preparer may become licensed. A nonlawyer petition preparer gives no assurance that his/her conduct is governed by any ethical guidelines because the nonlawyer petition preparation industry is not organized through a professional association nor is it self-policing. Other than § 110, there are no Arizona or federal statutes regulating the business of nonlawyer petition preparers. A nonlawyer petition preparer can give the client no means of recovery in the event the obligation to the client is breached, because there is neither malpractice (errors and omissions) insurance, surety bonds, nor an industry recovery fund.

■ Because a nonlawyer document preparer cannot give his/her clients adequate assurance that his/her interests will be protected through the course of a bankruptcy proceeding, society, speaking through Congress, has imposed limitations on the ability of nonlawyer petition preparers to act on behalf of debtors. The clear message of § 110 is that nonlawyer petition preparers may act at the specific direction of debtors by typing the information provided by the debtors, but, nonlawyer petition preparers may not give advice nor otherwise make decisions on behalf of the debtor. The petition preparer is also prohibited from interacting with the court on behalf of the debtor.

When viewed from this perspective, the issue at hand is not whether People's Law received a "payment," defined in the most narrow sense. The issue is whether People's Law controlled the debtor's filing fee and ultimately controlled the timing of the bankruptcy filing. Given that People's Law took possession of the filing fee and controlled the ultimate filing of the petition, this court must conclude that People's Law violated § 110(g).

In so concluding, this court considers the *potential* for harm. If the procedure employed by People's Law was used by an unscrupulous and/or incompetent petition preparer, it could result in harm to debtors. Indeed, the timing of the filing can sometimes determine whether a debtor will lose his/her home or other property to foreclosure.[2]

---

1. In so stating, the court renders no opinion on the competence of any particular document preparer.

2. For example, assume that a debtor retains a bankruptcy professional on the morning that a foreclosure sale is scheduled for 2:00 p.m. with respect to the debtor's residence. The debtor entrusts to the professional a money order for the filing fee and the petition and asks the professional to "stop" the foreclosure. However, due to a misunderstanding or inadvertence, the petition is not filed until 3:00. In the interim the

Thus, this court is compelled to find that the procedure followed by People's Law violated § 110(g) and to order People's Law to cease its practice of receiving from debtors their filing fees and arranging, on the debtor's behalf, for the filing of the case. However, this court will attach a sanction of zero dollars to this violation. A judgment consistent with this Memorandum Decision is being entered contemporaneously herewith.

debtor's house has been foreclosed. If the professional in this situation was a lawyer, the debtor may have a claim for malpractice and could seek recovery either from the lawyer's insurance carrier or, in certain instances, from the state bar's client security fund. However, if the professional was a nonlawyer petition preparer, it would be less unlikely that there would be a source of recovery.